**Gil BUGAYONG, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Docket No. 03–4204–AG.**

United States Court of Appeals, Second Circuit.

Argued: Dec. 5, 2005.

Decided: March 15, 2006.

Harry DeMell, Law Offices of Harry DeMell, New York, NY, for Petitioner.

John P. Cronan, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Kathy S. Marks, Assistant United States Attorney, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Respondent.

Before: KEARSE, CARDAMONE, and CABRANES, Circuit Judges.

PER CURIAM.

We consider here whether this Court has jurisdiction to review an order of the Board of Immigration Appeals ("BIA") affirming a decision of an immigration judge ("IJ") denying a petitioner's request for a waiver of inadmissibility under section 212(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(h) ("section 212(h) waiver of inadmissibility"), and for an adjustment of status under section 245 of the INA, 8 U.S.C. § 1255 ("section 245 adjustment of status"). We hold that such denials are discretionary judgments committed by law to the BIA (acting on behalf of the Attorney General) and that we are precluded from reviewing such discretionary judgments by 8 U.S.C. § 1252(a)(2)(B)(i). We further hold that, in the circumstances presented here, section 106(a)(1)(A)(iii) of the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, 310 (codified at 8 U.S.C. § 1252(a)(2)(D)) ("Section 106"), does not override the jurisdiction-denying provision of 8 U.S.C. § 1252(a)(2)(B)(i) because petitioner challenges a discretionary determination and does not raise any colorable "constitutional claims or questions of law" within the meaning of 8 U.S.C. § 1252(a)(2)(D). Accordingly, we dismiss the petition for review for lack of jurisdiction.

## BACKGROUND

Petitioner Gil Bugayong, a native and citizen of the Philippines, petitions for review of a January 6, 2003 decision of the BIA affirming a January 17, 2001 denial by the IJ of Bugayong's application for a section 212(h) waiver of inadmissibility and a section 245 adjustment of status.

Bugayong entered the United States on October 5, 1984 as a non-immigrant temporary worker under an H–1B visa that

permitted him to remain in the United States for up to three years. Bugayong worked as a registered nurse at Lincoln Hospital until 1986, at which time he was arrested for the rape and sexual abuse of two patients. In 1992, after his initial trial conviction before the New York State Supreme Court was reversed on appeal, Bugayong pleaded guilty to one count of sexual abuse in the first degree, for which he was sentenced to five years' probation.

On June 28, 1999, the INS served Bugayong with a Notice to Appear charging him with removability for remaining in the United States longer than permitted by his visa and for having been convicted of a felony involving moral turpitude. At a preliminary hearing before the IJ, Bugayong admitted, through counsel, the truth of the factual allegations in the Notice to Appear and conceded his removability. As relief from removal, Bugayong requested the discretionary relief of adjustment of status under INA section 245(i), 8 U.S.C. § 1255(i), based on his wife's status at the time as a lawful permanent resident.[1] However, because Bugayong had been convicted of "a crime involving moral turpitude," 8 U.S.C. § 1182(a)(2)(A)(i)(I), and thus was not "admissible to the United States for permanent residence" under 8 U.S.C. § 1255(i)(2)(A), Bugayong was first required to seek a discretionary waiver of inadmissibility under INA section 212(h), 8 U.S.C. § 1182(h). Section 212(h) provides in relevant part that

> [t]he Attorney General *may, in his discretion,* waive the application of [8 U.S.C. § 1182(a)(2)(A)(i)(I) ]
>
> . . .

(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established *to the satisfaction of the Attorney General* that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien[.]

. . . .

No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection.

8 U.S.C. § 1182(h) (emphases added).

At an evidentiary hearing conducted on August 17, 2000 and December 12, 2000, Bugayong testified about the events underlying his criminal conviction, stating that he had sexually abused two hospital patients while working as a nurse and admitting that what he did was "wrong" because he had "violated the patient's trust and the hospital's trust" and because he had "committed adultery." At the August 17 hearing, however, Bugayong indicated that he had believed that at least one of the patients had consented to the sexual abuse because "she never sa[id] no" or "acted out of order," and because she could have "said something" or "push[ed][him]" had she not consented, even though she was medicated at the time. By contrast, at the December 12, 2000 hearing, Bugayong appeared to alter his testimony, stating that he never believed that either of

---

**1.** In its January 6, 2003 decision, the BIA appears to have treated Bugayong's application for an adjustment of status as having been brought under INA section 245(a), 8 U.S.C. § 1255(a), rather than under INA section 245(i), 8 U.S.C. § 1255(i), most likely because Bugayong's wife had by that time become a United States citizen. However, as explained below, because Bugayong was not "admissible to the United States for permanent residence" under either section 245(a) or section 245(i), any difference between the two statutory provisions is not material to this case.

his victims had in fact consented to his acts of sexual abuse.

In a written decision dated January 17, 2001, the IJ denied Bugayong's application for a section 212(h) waiver of inadmissibility and a section 245 adjustment of status. The IJ concluded that, although Bugayong had successfully demonstrated that his removal would result in "extreme hardship" to a qualifying relative (*i.e.*, Bugayong's wife and two daughters), Bugayong did not warrant the requested discretionary relief. Emphasizing Bugayong's testimony about the two sexual assaults, the IJ found that Bugayong had failed "to take responsibility for his conduct" and that, although he had acknowledged that "he may have violated a trust" and "committed adultery," Bugayong nevertheless continued to believe "that what he did, he did with the consent of the victims." The IJ acknowledged Bugayong's testimony of December 12, 2000 indicating that his victims had not consented to the sexual abuse, but the IJ rejected such testimony as lacking in credibility, stating that despite Bugayong's efforts "to convince me that he was remorseful ... he could never look this court in the eye and indicate that what he did, he did by the means of force." *See* IJ Decision at 36; *see also id.* at 17 ("[T]his court really was not convinced that the respondent truly believed what he was saying [at the December 12, 2000 hearing]."). The IJ found it "very troubling" that Bugayong was "still in a state of denial" about his actions and, accordingly, declined to grant either a section 212(h) waiver of inadmissibility or a section 245 adjustment of status "as a matter of discretion."

On January 6, 2003, the BIA affirmed the IJ's decision, concluding that "[g]iven the severity of [Bugayong's] conviction, we find no basis to overturn the Immigration Judge's discretionary decision denying [Bugayong] a waiver of inadmissibility."

In so holding, the BIA noted Bugayong's conflicting testimony about the sexual assaults, as well as his admission that he had continued caring for patients for several years, despite his conviction and the revocation of his nursing license, by lying on subsequent employment applications. Bugayong now seeks review before this Court of the denial by the IJ and the BIA of his request for relief under INA section 212(h) and section 245, arguing that (1) because the IJ and BIA allegedly "ignored" or "misstated" Bugayong's testimony, their decisions were "not in accordance with the facts of the case" or "in accordance with the law," Pet'r's Br. at 9; (2) once the IJ found that Bugayong's removal would cause "extreme hardship" to a qualifying relative, the IJ was "compelled" to grant Bugayong a waiver of inadmissibility under INA section 212(h), *id.* at 7–8, 10; and (3) the BIA used an improper standard in reviewing Bugayong's application for a section 212(h) waiver because the Board failed to apply a newly published interim rule to Bugayong's case, *id.* at 11–14.

## DISCUSSION

■ Where, as here, the BIA adopts or affirms the decision of the IJ and supplements that decision, we review the decision of the IJ as supplemented by the BIA. *See Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir.2006). The threshold issue in this case is whether we have jurisdiction to review the IJ's discretionary denial of Bugayong's request for a section 212(h) waiver of inadmissibility and for a section 245 adjustment of status. That determination in turn requires an analysis of two interrelated statutory provisions: (1) the jurisdiction-denying provision located at 8 U.S.C. § 1252(a)(2)(B)(i), and (2) the jurisdiction-restoring provision recently added at 8 U.S.C. § 1252(a)(2)(D) pursuant to Section 106 of the REAL ID Act.

The jurisdiction-denying provision of 8 U.S.C. § 1252(a)(2)(B)(i) provides, under the heading of "[d]enials of discretionary relief," that "[n]otwithstanding any other provision of law ... no court shall have jurisdiction to review ... (i) any judgment regarding the granting of relief under section 1182(h) [INA section 212(h)] ... or [section] 1255 of this title [INA section 245]." 8 U.S.C. § 1252(a)(2)(B)(i). By its express terms, the waiver of inadmissibility sought by Bugayong under INA section 212(h) entailed a request for discretionary relief, inasmuch as that statutory provision specifies that "[t]he Attorney General *may, in his discretion* waive [inadmissibility] ... if it is established *to the satisfaction of the Attorney General* that the alien's denial of admission would result in extreme hardship" to a qualifying relative. 8 U.S.C. § 1182(h) (emphases added). Likewise, the IJ's denial of Bugayong's request for an adjustment of status under INA section 245 qualified as a discretionary "judgment" within the meaning of 8 U.S.C. § 1252(a)(2)(B)(i), inasmuch as section 245(i) provides that "the Attorney General *may* adjust the status of [an] alien to that of an alien lawfully admitted for permanent residence if," *inter alia*, "the alien ... is admissible to the United States for permanent residence." 8 U.S.C. § 1255(i)(2) (emphasis added); *see also id.* § 1255(a) (stating that "[t]he status of an alien ... *may* be adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe*" if certain specified conditions are met (emphases added)). Accordingly, judicial review of an IJ's decision to grant discretionary relief under INA section 212(h) and section 245 is barred by the plain language of 8 U.S.C. § 1252(a)(2)(B)(i).[2]

Congress, however, has recently altered the statutory landscape by providing a limited exception to the jurisdictional bar established by 8 U.S.C. § 1252(a)(2)(B)(i). Section 106 of the REAL ID Act specifies that

> [n]othing in [8 U.S.C. § 1252(a)(2)(B)] or (C), or in any other provision of [the INA] (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of *constitutional claims or questions of law* raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (emphasis added). In *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144 (2d Cir.2006), we concluded, upon review of our case law and the legislative history of Section 106, that "[b]ecause the REAL ID Act only provides us with jurisdiction to review constitutional claims or matters of statutory construction, we remain deprived of jurisdiction to review discretionary and factual determinations" by an IJ. *Id.* at 154. Our holding was consistent with the unanimous view of the other Circuits that have considered this question. *See Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir.2005) ("Notwithstanding [Section 106] of the [REAL ID] Act, ... discretionary or factual determinations continue to fall outside the jurisdiction of the court of appeals entertaining a petition for review."); *Jean v. Gonzales*, 435 F.3d 475, 480 (4th Cir.2006) (same); *Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir.2006) (same); *Mehilli v. Gonzales*, 433 F.3d 86, 93 (1st Cir.2005) (same); *Chacon–Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 957 (11th Cir.2005) (same); *see also Ramadan v. Gonzales*, 427 F.3d 1218,

---

**2.** Congress's intent to deny judicial review of section 212(h) waivers of inadmissibility, moreover, is further underscored by the express language of section 212(h) itself, which specifies that "[n]o court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection." 8 U.S.C. § 1182(h).

1222 (9th Cir.2005) (holding that court of appeals lacked jurisdiction under the REAL ID Act to review "a predominantly factual determination" of the IJ); *Grass v. Gonzales,* 418 F.3d 876, 879 (8th Cir.2005) ("[Section 106] grants no jurisdiction to review an IJ's purely discretionary decision to deny a continuance of a removal hearing, unless that ruling resulted in such procedural unfairness as to implicate due process."); *Gattem v. Gonzales,* 412 F.3d 758, 767 & n. 8 (7th Cir.2005) (holding that, under Section 106, the courts of appeals have jurisdiction to consider "question[s] of law" raised in petitions for review, but not discretionary decisions of the Attorney General).

■ Applying these principles to the facts of this case, we conclude that we lack jurisdiction to review Bugayong's challenge to the IJ's discretionary denial of a section 212(h) waiver of inadmissibility and a section 245 adjustment of status because Bugayong fails to raise any colorable "constitutional claims or questions of law" within the meaning of Section 106 of the REAL ID Act, as codified at 8 U.S.C. § 1252(a)(2)(D). In *Xiao Ji Chen,* we emphasized that the term "questions of law" in Section 106 "cannot be construed in the broadest possible light," but instead "refers to a narrow category of issues regarding statutory construction." *Xiao Ji Chen,* 434 F.3d at 153–54 (internal quotation marks omitted). Accordingly, we held there that the mere assertion by the petitioner that the IJ had "fail[ed] to apply the law," and thereby "committed legal error or otherwise abused his discretion," did not itself establish a "question[ ] of law" over which we had jurisdiction under the REAL ID Act. *See id.* at 154–55.

■ Likewise, the assertion here that the IJ and the BIA "abused their discretion" by allegedly "ignor[ing]" or "misstat[ing]" Bugayong's testimony, Pet'r's Br. at 9, 11—thereby reaching an "arbitrary and capricious" decision that was "not in accordance with the facts of the case" or "in accordance with the law," *id.* at 9—does not suffice to overcome the clear jurisdictional bar established by 8 U.S.C. § 1252(a)(2)(B)(i). As *Xiao Ji Chen* makes clear, absent a specific issue of statutory construction, the term "questions of law" in 8 U.S.C. § 1252(a)(2)(D) does not provide our Court with jurisdiction to review a petitioner's challenge to a decision firmly committed by statute to the discretion of the Attorney General. *See Xiao Ji Chen,* 434 F.3d at 154; *see also Higuit v. Gonzales,* 433 F.3d 417, 420 (4th Cir.2006) ("We are not free to convert every immigration case into a question of law, and thereby undermine Congress's decision to grant limited jurisdiction over matters committed in the first instance to the sound discretion of the Executive."). Moreover, as we have recently held in *Saloum v. U.S. Citizenship & Immigration Services,* 437 F.3d 238 (2d Cir.2006), the mere assertion that an IJ has "abused his discretion" by "incorrectly weigh[ing] the evidence, fail[ing] to explicitly consider certain evidence, [or] simply reach[ing] the wrong outcome" does not itself establish a colorable "constitutional claim" within the meaning of 8 U.S.C. § 1252(a)(2)(D), even if a petitioner "dress[es] up" his claim in the language of due process. *See id.* at 244 (internal quotation marks omitted); *see also Torres–Aguilar v. INS,* 246 F.3d 1267, 1271 (9th Cir.2001) (rejecting notion that a petitioner may "circumvent clear congressional intent to eliminate judicial review over discretionary decisions through the facile device of re-characterizing an alleged abuse of discretion as a 'due process' violation"). Because Bugayong's argument that the IJ erred in evaluating his hearing testimony is, at bottom, a challenge to the IJ's exercise of his discretion, we lack jurisdiction to consider Bugayong's

claim, notwithstanding the language of the REAL ID Act. *See Elysee v. Gonzalez*, 437 F.3d 221, 223–24 (1st Cir.2006) (holding that the petitioner's claim, *inter alia*, that the IJ "err[ed] in concluding that [the petitioner] was not credible in his testimony about the [state court] criminal proceedings and had not taken responsibility for his criminal conduct" did "not raise even a colorable constitutional claim or question of law," inasmuch as the petitioner merely "attack[ed] ... the factual findings made and the balancing of factors engaged in by the IJ"); *see also De La Vega v. Gonzales*, 436 F.3d 141, 146 (2d Cir.2006) (stating that "Section 106 of the REAL ID Act does not override statutory provisions denying the courts jurisdiction to review discretionary decisions of the Attorney General" because "challenges to the exercise of routine discretion ... do not raise 'constitutional claims or questions of law' ").

■ Bugayong implicitly seeks to overcome the clear jurisdictional bar established by 8 U.S.C. § 1252(a)(2)(B)(i) by arguing that the IJ's adjudication of his request for a section 212(h) waiver of inadmissibility was not in fact discretionary. Specifically, Bugayong contends that once a finding of "extreme hardship" under INA section 212(h) was made, as it was in this case, the IJ was "compelled" to grant the requested waiver of inadmissibility. Pet'r's Br. at 7–8; *see also id.* at 10 ("Once the [IJ] found extreme hardship[,] there was *no discretion* in whether or not to grant relief under [INA section 212(h)]." (emphasis added)). Although Bugayong cloaks his argument in the language of statutory interpretation, his claim is simply not colorable. *See Saloum*, 437 F.3d at 243. Nothing in the operative statutory text indicates that an

IJ is required reflexively to exercise his discretion in favor of a petitioner once the IJ finds that a petitioner's removal would cause "extreme hardship" to a qualifying relative. Indeed, the use of the permissive "may" in 8 U.S.C. § 1182(h) indicates that the "extreme hardship" analysis is only a threshold finding that an IJ must ordinarily make before reaching the ultimate, and separate, determination as to whether he should exercise his discretion in favor of a petitioner and grant a waiver of inadmissibility. *See In re Mendez–Moralez*, 21 I. & N. Dec. 296, 301 (BIA 1996) ("[E]stablishing extreme hardship and eligibility for section 212(h)(1)(B) relief does not create any entitlement to that relief. Extreme hardship is a requirement for eligibility, but once established it is but one favorable discretionary factor to be considered."); *cf. Drax v. Reno*, 338 F.3d 98, 113 (2d Cir.2003) ("[E]ven where an alien satisfies the statutory requirements of eligibility for an adjustment of status ..., the [INS] has discretion under section 245 to deny the application." (internal quotation marks omitted)). Moreover, as we have held under analogous circumstances, an IJ's finding of either "extreme hardship" or "exceptional and extremely unusual hardship" [3] is itself a discretionary determination that we have no jurisdiction to review. *See De La Vega*, 436 F.3d at 144–46; *Kalkouli v. Ashcroft*, 282 F.3d 202, 204 (2d Cir.2002); *see also* 8 U.S.C. § 1182(h)(1)(B) (stating that "extreme hardship" must be "established *to the satisfaction of the Attorney General*" (emphasis added)). Accordingly, because the IJ's denial of Bugayong's request for a section 212(h) waiver of inadmissibility constituted a discretionary "judgment" under 8 U.S.C. § 1252(a)(2)(B)(i), Bugayong's claim remains barred from judicial review.

---

**3.** We need not, as Bugayong requests, remand to the BIA to apply the "exceptional and extremely unusual hardship" standard set forth at 8 C.F.R. § 212.7(d), inasmuch as the BIA's January 6, 2003 decision in this case

was issued three weeks *before* the effective date of that regulation. *See* Waiver of Criminal Grounds of Inadmissibility for Immigrants, 67 Fed.Reg. 78,675 (Dec. 26, 2002) ("This rule is effective January 27, 2003.").

## CONCLUSION

In sum, we hold that

(1) we lack jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(i) to review the IJ's discretionary denial of petitioner's request for a waiver of inadmissibility under INA section 212(h), 8 U.S.C. § 1182(h), and for an adjustment of status under INA section 245, 8 U.S.C. § 1255; and

(2) in the circumstances presented here, Section 106 of the REAL ID Act of 2005, 8 U.S.C. § 1252(a)(2)(D), does not override the jurisdiction-denying provision of 8 U.S.C. § 1252(a)(2)(B)(i) because petitioner challenges a discretionary determination of the IJ and does not raise any colorable "constitutional claims or questions of law" within the meaning of 8 U.S.C. § 1252(a)(2)(D).

\*    \*    \*    \*    \*    \*

Accordingly, for the reasons stated above, we DISMISS the petition for review.